No. 23-705

---

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

*In re: Santa Fe Natural Tobacco Company*
*Marketing and Sales Practices & Products Liability Litigation*

---

On Petition For Permission To Appeal From
The United States District Court For The District Of New Mexico

No. 1:16-md-2695-JB-LF (MDL No. 2695)
(The Honorable James O. Browning)

---

### DEFENDANTS' RESPONSE TO PLAINTIFFS'
### RULE 23(f) PETITION FOR PERMISSION TO APPEAL

---

Andrew G. Schultz
Melanie B. Stambaugh
**RODEY, DICKASON,**
**SLOAN, AKIN & ROBB, P.A.**
201 3rd Street NW, Suite 2200
Albuquerque, NM 87102
aschultz@rodey.com
mstambaugh@rodey.com
505-768-7288

David M. Monde
**JONES DAY**
1221 Peachtree Street NE
Suite 400
Atlanta, GA 30309
dmmonde@jonesday.com
404-521-3939

Meir Feder
Sharyl A. Reisman
**JONES DAY**
250 Vesey Street, Floor 34
New York, NY 10281
mfeder@jonesday.com
sareisman@jonesday.com
212-326-3939

Noel J. Francisco
William D. Coglianese
**JONES DAY**
51 Louisiana Drive NW
Washington, DC 20001
njfrancisco@jonesday.com
wcoglianese@jonesday.com
202-879-3939

*Counsel for Defendants-Respondents Santa Fe Natural Tobacco Co.,*
*Reynolds American Inc., and R.J. Reynolds Tobacco Co.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................... 1

ARGUMENT ........................................................................................... 2

I.   Plaintiffs' petition confirms that review is required to resolve how the need for extensive individualized inquiries to establish who has a claim affects class certification................................................................. 2

II.  Plaintiffs' petition confirms that review is needed to address how *Comcast's* requirements apply in the context of consumer-fraud actions.................................................................................................. 9

III. Plaintiffs' other arguments—resting on the notion that the district court should have disregarded fundamental differences between class members—only underscore infirmities in their position. .......................... 12

CONCLUSION ...................................................................................... 15

CERTIFICATE OF COMPLIANCE ........................................................... 17

CERTIFICATE OF ELECTRONIC SUBMISSION .................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abraham v. WPX Prod. Productions, LLC,*
  317 F.R.D. 169 (D.N.M. 2016) .................................................................. 4

*Briseno v. ConAgra Foods, Inc.,*
  844 F.3d 1121 (9th Cir. 2017) .................................................................. 5

*Carrera v. Bayer Corp.,*
  727 F.3d 300 (3d Cir. 2013) ..................................................................... 8

*Cherry v. Dometic Corp.,*
  986 F.3d 1296 (11th Cir. 2021) ................................................................ 5

*Cline v. Sunoco, Inc. (R&M),*
  333 F.R.D. 676 (E.D. Okla. 2019) ........................................................... 3

*Cole v. ASARCO Inc.,*
  256 F.R.D. 690 (N.D. Okla. 2009) ........................................................... 3

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2013) ............................................................................... 1, 9

*In re EpiPen Mktg., Sales Practices & Antitrust Litig.,*
  2020 WL 1180550 (D. Kan. Mar. 10, 2020) ............................................. 4

*In re Nexium Antitrust Litig.,*
  777 F.3d 9 (1st Cir. 2015) ....................................................................... 5

*In re Niaspan Antitrust Litig.,*
  67 F.4th 118 (3d Cir. 2023) ..................................................................... 5

*In re Petrobras Sec.,*
  862 F.3d 250 (2d Cir. 2017) ..................................................................... 5

*In re: Syngenta AG MIR 162 Corn Litig.,*
  2016 WL 5371856 (D. Kan. Sept. 26, 2016) ............................................ 4

*Krakauer v. Dish Network, L.L.C.,*
  925 F.3d 643 (4th Cir. 2019) ................................................................... 5

*Lavigne v. First Community Bancshares, Inc.*,
2018 WL 2694457 (D.N.M. June 5, 2018) .................................................. 3

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ........................................................ 5

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
863 F.3d 460 (6th Cir. 2017) ...................................................... 5

*Smith v. LifeVantage Corp.*,
341 F.R.D. 82 (D. Utah 2022) ...................................................... 4

*Vallario v. Vandehey*,
554 F.3d 1259 (10th Cir. 2009) .............................................. 2, 4

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................... 8

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*,
725 F.3d 1213 (10th Cir. 2013) ................................................. 7

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ............................................................................ 6

## INTRODUCTION

Plaintiffs' petition confirms that the decision below warrants interlocutory review, particularly regarding a critical recurring issue that Defendants similarly raise in their own 23(f) petition: How a need for individualized litigation over whether each claimant actually has a claim affects whether to certify a class. As both sides recognize, due to the absence of precedent from this Court, the district court had to "predict[]" (Dkt. 394 at 253 n.65 ("Order")) how this Court would factor the thousands of individual inquiries that would be required in these cases into the Rule 23 analysis. Both sides—and the court below—also recognize that this issue has divided district courts within this Circuit, just as it has divided courts of appeals. There is a plain need for this Court to clarify the proper approach to this important issue in class actions. That alone is sufficient reason for granting review.

There is also a need for review on a second recurring class-action question raised in both sides' petitions: What is required for plaintiffs' damages model to fit their theory of liability in a consumer-fraud case, as mandated by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)? *Comcast* requires plaintiffs seeking class certification to show that their damages model will isolate "only those damages attributable to th[eir] theory" of liability. *Id.* at 35. Where Plaintiffs claim a representation was misleading in a specific way, Defendants contend that Plaintiffs'

model must isolate the price premium that resulted from consumers being mis-led *in that respect*. Plaintiffs, by contrast, claim their model need not isolate those damages, and may include price premiums resulting from concededly truthful meanings of the challenged representation. And the district court, for its part, required isolation of the damages from Plaintiffs' theory of falsity for one of Plaintiffs' two theories, but not the other. This case thus presents three conflicting views of what *Comcast* requires in a consumer-fraud class action, and highlights another recurring question on which this Court has not established a rule.

The Court's resolution of these questions would undoubtedly be "significant to the case at hand," as the outcome would have been different had the district court decided either question differently. *See Vallario v. Vandehey*, 554 F.3d 1259, 1263 (10th Cir. 2009). And given that these issues have arisen in a number of class actions, the Court's decision would also be "significant … to class action cases generally." *Id.* The Court should therefore grant both parties' petitions.

## ARGUMENT

**I. Plaintiffs' petition confirms that review is required to resolve how the need for extensive individualized inquiries to establish who has a claim affects class certification.**

**A.** All parties agree that this Court should grant review to address how individualized questions regarding whether particular claimants actually have claims—*i.e.*, whether they are members of the class—factor into the Rule 23

analysis. Pls.' Pet. at 14-18; Defs.' Pet. at 12-19, *Santa Fe Natural Tobacco Co. v. Dunn*, No. 23-706 (10th Cir. Sept. 15, 2023). This issue is often addressed as one of "ascertainability," but its relevance under Rule 23 goes well beyond whether the class as a whole is ascertainable. In a consumer class action, whether any given claimant actually bought the product is a fundamental element of his or her cause of action. If answering that question will require a large number of individual mini-trials, the predominance and superiority requirements of Rule 23(b)(3) are directly implicated—separate and apart from any question of whether the class is ascertainable.

Plaintiffs, like Defendants, recognize that without Tenth Circuit precedent, the district court had to "predict" how this Court would factor the need for in-dividualized inquiries into who actually has a claim into the class-certification determination—just as other district courts in this Circuit have had to do when confronting this question. Order at 243-46, 253 n.65; Pls.' Pet. at 14-16; Defs.' Pet. at 12-14 & n.4. Some district courts in this Circuit have held that, as a pre-requisite for certification, there must be an "administratively feasible" means of identifying class members.[1] Others have predicted that this Court would "reject[]"

---

[1] *See, e.g.*, *Cole v. ASARCO Inc.*, 256 F.R.D. 690, 696 (N.D. Okla. 2009) (denying certification where "identification of members of the proposed class [of property owners] would be administratively unfeasible," due to limitations in property records); *Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 688 (E.D. Okla. 2019); *Lavigne v. First Community Bancshares, Inc.*, 2018 WL 2694457, at *7 (D.N.M.

a strict standard requiring an administratively feasible mechanism for identifying class members," and would instead hold that a class is sufficiently ascertainable so long as the class definition is "based on objective criteria."[2] And in the decision below, the district court charted a third course, predicting that this Court would "weigh administrative feasibility," but would "not view [it] as a prerequisite the failure of which dooms a proposed class." Order at 252-53. These divergent approaches present precisely the sort of "unresolved issue of law relating to class actions," with significance both to "the case at hand" and "to class action cases generally," for which Rule 23(f) exists. *Vallario*, 554 F.3d at 1263.

The broader division over this issue among other courts of appeals, which Plaintiffs acknowledge (Pls.' Pet. at 16) and which the district court explored at length (Order at 238-42), further underscores the need for this Court to establish the rule in *this* Circuit. As Defendants explained, the Circuits have taken multiple conflicting positions regarding how an inability to establish who has a claim through common proof affects the class-certification analysis. Defs.' Pet. at 14-

---

June 5, 2018); *Abraham v. WPX Prod. Productions, LLC*, 317 F.R.D. 169, 254 (D.N.M. 2016); *cf. Smith v. LifeVantage Corp.*, 341 F.R.D. 82, 94 (D. Utah 2022) (concluding that the administrative feasibility of identifying class members is "relevant to and addressed by the predominance and superiority requirements").

[2] *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 2020 WL 1180550, at *11-12, *60 (D. Kan. Mar. 10, 2020); *see also In re: Syngenta AG MIR 162 Corn Litig.*, 2016 WL 5371856, at *3, *13-15 (D. Kan. Sept. 26, 2016).

16. Plaintiffs claim they are asking this Court to follow "the majority of the Circuits" in holding that the need for individualized determinations of class membership cannot even "tilt against" a finding of predominance. Pls.' Pet. at 7, 14, 16. But that is wrong. As Defendants have shown, some Circuits have held that there is an absolute requirement that class members be identifiable through "administratively feasible" means;[3] others have not imposed an absolute requirement but recognize that the need for individualized inquiries into class membership is relevant to whether common issues predominate;[4] and even the minority of courts that treat ascertainability as solely a case-management concern—as the district court did below—recognize that it is relevant to the Rule 23(b)(3) superiority inquiry.[5] This case gives the Court the opportunity to clarify the law in this Circuit.

---

[3] *See, e.g.*, *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 133 (3d Cir. 2023); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (citation omitted)); *cf. In re Nexium Antitrust Litig.*, 777 F.3d 9, 19-21 (1st Cir. 2015).

[4] *See, e.g.*, *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 473-74 (6th Cir. 2017); *In re Petrobras Sec.*, 862 F.3d 250, 268 (2d Cir. 2017).

[5] *See, e.g.*, *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1303 (11th Cir. 2021) ("To be sure, administrative feasibility has relevance for Rule 23(b)(3) classes, in the light of the manageability criterion of Rule 23(b)(3)(D)."); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (class membership inquiries should be viewed "as one component of the superiority inquiry"); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663–64 (7th Cir. 2015) (same).

**B.** Plaintiffs' invitation to the Court to make itself an outlier on this issue should be rejected, as their position cannot be squared with Rule 23's text or purpose. Plaintiffs contend that the need for thousands of individual determinations of a fundamental element of each claimant's cause of action—whether he or she actually bought the product at issue—should be excluded entirely from the Rule 23(b)(3) predominance analysis. In their view, the need for such individualized mini-trials cannot even "tilt against a finding that common questions predominate." Pls.' Pet. at 7; *see also id.* at 14.

As Defendants' petition explained, that position is at odds with Rule 23. Defs.' Pet. at 16-19. Nothing justifies making class-membership inquiries an exception to Rule 23(b)(3)'s express prerequisite for class certification: that "questions of law or fact common to class members predominate over any questions affecting only individual members." Individual inquiries into class membership, like any other individual inquiries, necessarily bear on whether or not common issues predominate. Here, for instance, determining whether each claimant actually purchased Natural American Spirit ("NAS") cigarettes, in one of the relevant states and during the relevant period, is a necessary part of adjudicating the class members' claims. Where, as here, class membership can be assessed only through thousands of individualized litigations, nothing in Rule 23 prevents a court from concluding that "individualized issues will overwhelm [any]

questions common to the class," such that predominance is "destroyed." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013).

**C.** Plaintiffs, contrary to the assertions of their petition, have identified no way of resolving the threshold issue of class membership that would avoid thousands of separate determinations and allow common issues to predominate. Plaintiffs claim there is a "comprehensive database of class member information." Pls.' Pet. at 17. But it was established below that the database in question does not remotely resemble that description, but instead merely contains information on the *subset* of consumers who choose to contact Santa Fe Natural Tobacco Co. ("SFNTC")—and even as to those, it collects only self-reported information on brand use and brand preference. Dkt. 315 at 28. The database does not attempt to track or verify purchases. Its inability to identify class members is underscored by the fact that nine of the thirteen named Plaintiffs either are not even in the database or have profiles that do not self-report NAS as a brand they ever used or preferred. *Id.* at 28-29.

Plaintiffs also suggest that class members can be identified using "proof of purchases[] [and] receipts." Pls.' Pet. at 5. But there is no record evidence that consumers retain *any* such purchase records for *any* portion of the class period—

let alone for the full period, which ended in 2017 and goes as far back as 2009. Order at 257-58.

Plaintiffs are thus left arguing that class members can simply submit self-serving affidavits as part of a post-certification claims-administration process. Pls.' Pet. at 17. But such affidavits would not eliminate the need for thousands of mini-trials unless the affidavits were made irrebuttable. And any such "proof by affidavit" would be irreconcilable with the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, which makes clear that class members must prove the elements of their claims just as if they were in individual litigation: a "class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims." 564 U.S. 338, 367 (2011). Forcing Defendants to simply accept thousands of affidavits, without being able to test each claimant's assertions through the normal adversarial process, would violate this rule. *See also, e.g.*, *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("A defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues.").

\*      \*      \*

Defendants agree with Plaintiffs that review is needed so that this Court can address how class-membership inquiries factor into the Rule 23 analysis.

- 8 -

## II. Plaintiffs' petition confirms that review is needed to address how *Comcast*'s requirements apply in the context of consumer-fraud actions.

The parties also agree that the Court should grant review to clarify how *Comcast* applies in a consumer-fraud action based on claimed misrepresentations. *Comcast* held that, for a classwide damages model to "establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)," the model "must measure *only* those damages attributable to [the operative] theory" of liability. 569 U.S. at 35 (emphasis added). The parties' dispute here turns on how that rule applies in cases involving an allegedly deceptive marketing representation—particularly where the representation conveys multiple meanings and is alleged to be false only in one specific way. This Court has not addressed that question regarding *Comcast*'s application.

The decision below underscores the need for the Court to do so. As Defendants have explained (Defs.' Pet. at 9-10), the district court reached conflicting conclusions in applying *Comcast* to Plaintiffs' two theories:

**Safer-Cigarette Theory.** With respect to Plaintiffs' safer-cigarette theory—that the "natural" and "additive-free" descriptors misled consumers into believing NAS cigarettes are safer—it is undisputed that these descriptors carry a range of meanings that it is entirely permissible for SFNTC to convey. Indeed, Plaintiffs conceded that the descriptors are associated with concepts like "quality and wholesomeness," and "eco-consciousness." Dkt. 278 at 8, 17; *see also id.* at 19–

20 ("environmentally friendly"); *id.* at 27 ("wholesome"). Their marketing expert similarly testified that the descriptors convey truthful and permissible messages regarding quality, taste, and the sustainability of SFNTC's farming methods. Dkt. 362 at 86-87.

Plaintiffs do not contest that the value consumers place on these concededly permissible meanings may contribute to a higher price for the product. Nevertheless, as the district court recognized, their damages model would treat the price value of these permissible meanings as damages, because that model "incorporates *all possible values* which consumers may associate with the challenged labels and which may contribute to Natural American cigarettes' price premium, as opposed to isolating the understandings which the Plaintiffs allege the challenged labels cause." Order at 287 (emphasis added). The court thus concluded that the model "may allow for an inflated damage amount depending on the value associated with the unchallenged or truthful claims," and so "is not an adequate fit with the Plaintiffs' Safer-Cigarette liability theory." *Id.* at 287, 292.

**Menthol Theory.** The district court reached the opposite result with respect to Plaintiffs' menthol theory—the theory that "additive-free natural tobacco" on NAS menthol cigarette packages and advertisements misled consumers because menthol is an additive. As Defendants have explained, the only proper damages under this theory are the difference in value between (a) menthol cigarettes with

*entirely* additive-free tobacco (*i.e.*, no chemical additives, and no menthol migrates from the filter to the tobacco) and (b) menthol cigarettes that are *almost* entirely additive-free (still no chemical additives, but some natural menthol migrates from the filter). Defs.' Pet. at 20-21. But again, Plaintiffs' damage model does not isolate that value, and instead would capture the *entire* value of the "additive-free natural tobacco" descriptor—as if consumers were tricked into buying cigarettes that were loaded with chemical additives, when in fact they received cigarettes that were free of all additives other than some migrated natural menthol. *Id.* at 21-22.

The flaw here is thus the same as the flaw with respect to Plaintiffs' safer-cigarette theory: their model would allow Plaintiffs to recover windfall damages for harm that they did not suffer. To revisit an analogy from Defendants' petition: If milk marketed as fat-free actually contained 0.1% fat, the measure of damages would not be the price difference between fat-free and whole milk, because consumers did not receive whole milk; they received milk with a trace amount of fat. Instead, damages would be the actual delta between what consumers were marketed (milk with no fat) and what they received (milk with 0.1% fat). The *Comcast* problem is the same for both theories.

Nevertheless, the court did not reach the same conclusion it had reached with respect to Plaintiffs' safer-cigarette theory. Instead, it concluded that damages

- 11 -

under Plaintiffs' menthol theory "do not rely on the consumers' interpretation of the label," and therefore held that their model "is an adequate fit for their Menthol Theory" under *Comcast*. Order at 298-99.

There are thus three different positions at play: the district court's, which requires a narrowly tailored damages model for Plaintiffs' safer-cigarette theory of liability but accepts a broader model for the menthol theory; Defendants', which requires a narrowly tailored model for both theories; and Plaintiffs', which accepts a broader model for both theories. In short, there is considerable confusion about how *Comcast* applies in a consumer-fraud case. And given the frequency with which consumer-fraud class actions arise—where the suitability of a damages model will often be contested—this is an issue that calls out for the Court's attention. The Court should grant review to provide clarity on this important question and establish that, in a consumer-fraud class action, plaintiffs' damages model must isolate the specific value attributable to a supposedly deceptive claim.

### III. Plaintiffs' other arguments—resting on the notion that the district court should have disregarded fundamental differences between class members—only underscore infirmities in their position.

Plaintiffs also take issue with aspects of the decision below that Defendants did not raise in their own 23(f) petition. Plaintiffs' arguments are misguided, and could be easily dispensed with after this Court grants review.

**A.** Plaintiffs primarily take issue with the district court's conclusion that, for purposes of their safer-cigarette theory, it would be necessary to determine whether each consumer saw the disclaimer stating: "No additives in our tobacco does NOT mean a safer cigarette." Pls.' Pet. at 9-12; Order at 312-14. But that holding was correct. Because the disclaimer directly repudiated the inference underlying Plaintiffs' safer-cigarette theory, the district court recognized that whether a consumer saw that disclaimer before buying NAS cigarettes necessarily "affects whether that consumer is entitled to damages." Order at 312. In other words, the liability question a jury would need to answer, in determining whether someone was materially misled, would significantly differ—at the very least—based on whether or not he or she saw the disclaimer. And Plaintiffs themselves acknowledged below that consumers would differ as to whether they saw the disclaimer before purchasing. *See* Dkt. 331 at 17 n.13 ("[T]he 'additive-free' disclaimer … would not necessarily have been seen by a consumer prior to purchase."). Thus, the only way for a jury to adjudicate Plaintiffs' claims would be through individualized inquiries into this issue.

Against this, Plaintiffs contend that the district court "manifestly erred" because it elsewhere (in one part of its findings of fact) credited their claim that the disclaimer did not affect consumer perceptions, supposedly making it "irrelevant as a matter of law" "whether a proposed class member viewed the disclaimer

prior to purchase." Pls.' Pet. at 10-11. Plaintiffs misunderstand the import of the district court's findings. The court did not rule as a matter of law that the disclaimer was ineffective (nor could it have). Although the court recited studies put forth by Plaintiffs for the proposition that the disclaimer (and others used in connection with other cigarettes) did not offset health misperceptions that some consumers might form, the court also restated its own prior holding (from its ruling on Defendants' motion to dismiss) that "reasonable consumers who saw the disclaimer would understand that a lack of additives does *not* make Natural American cigarettes healthier." Order at 313 (emphasis added) (citing Dkt. 146 at 171-75).

Notwithstanding Plaintiffs' studies, a jury would face a different liability question for consumers that saw the disclaimer and those that did not: Whether a reasonable consumer who saw *only* the descriptors would read them as meaning the cigarettes were safer is fundamentally different from the same question for consumers who saw the descriptors in conjunction with the statement that "No additives in our tobacco does NOT mean a safer cigarette." The district court was thus correct in holding that it would be necessary to individually determine whether each consumer saw the disclaimer, undermining Plaintiffs' argument that common issues would predominate. *Id.* at 313-14.

**B.** Plaintiffs also argue that the district court erred by purportedly ruling that, for purposes of their safer-cigarette theory, it would be necessary to determine "how consumers may have interpreted the Defendants' deceptive labeling." Pls.' Pet. at 18-19 (citing Order at 312-14). But that misstates the district court's holding, which did not rely on a need to inquire into consumers' understanding of any term as a reason for denying certification of any safer-cigarette class.

Instead, insofar as the court considered Defendants' argument "regarding whether the proposed class members saw different labels," it concluded only that it would be necessary to know "whether an individual consumer *saw a disclaimer* before purchasing a pack of Natural American cigarettes." Order at 312 (emphasis added). And the court held that it is this need to determine "whether an individual proposed class member *viewed a disclaimer*" that "tilts against a finding of predominance." *Id.* at 319 (emphasis added); *see also id.* at 335, 342, 347, 358, 366, 373, 383, 393, 404, 410, 418. As explained immediately above, that conclusion was correct. *Supra* at III.A. Plaintiffs' extended citations regarding the need for common issues to predominate (Pls.' Pet. at 19-22) do nothing to cast doubt on that conclusion.

## CONCLUSION

Defendants agree with Plaintiffs that review under Rule 23(f) is warranted. The Court should grant both sides' 23(f) petitions.

Dated: September 28, 2023

Respectfully submitted,

/s/ Andrew G. Schultz

Andrew G. Schultz
Melanie B. Stambaugh
**RODEY, DICKASON,
SLOAN, AKIN & ROBB, P.A.**
201 3rd Street NW, Suite 2200
Albuquerque, NM 87102
aschultz@rodey.com
mstambaugh@rodey.com
505-768-7288

David M. Monde
**JONES DAY**
1221 Peachtree Street NE
Suite 400
Atlanta, GA 30309
dmmonde@jonesday.com
404-521-3939

Meir Feder
Sharyl A. Reisman
**JONES DAY**
250 Vesey Street, Floor 34
New York, NY 10281
mfeder@jonesday.com
sareisman@jonesday.com
212-326-3939

Noel J. Francisco
William D. Coglianese
**JONES DAY**
51 Louisiana Drive NW
Washington, DC 20001
njfrancisco@jonesday.com
wcoglianese@jonesday.com
202-879-3939

*Counsel for Defendants-Respondents Santa Fe Natural Tobacco Co.,*
*Reynolds American Inc., and R.J. Reynolds Tobacco Co.*

## CERTIFICATE OF COMPLIANCE

1.  The foregoing document complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1) because, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f), this document contains 3,568 words (as calculated by Microsoft Word).

2.  The foregoing document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Tenth Circuit Rule 32(A), and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word (version 2302) in 14-point Calisto MT.

Dated: September 28, 2023          */s/ Andrew G. Schultz*
_____

Andrew G. Schultz
**RODEY, DICKASON,**
**SLOAN, AKIN & ROBB, P.A.**
201 3rd Street NW, Suite 2200
Albuquerque, NM 87102
aschultz@rodey.com
505-768-7288

- 17 -

## CERTIFICATE OF ELECTRONIC SUBMISSION

I hereby certify that, on September 28, 2023, I transmitted the foregoing document to the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit via the court's CM/ECF system. I further certify that all parties are represented by counsel of record who are registered CM/ECF users and who will be served by the Court's CM/ECF system.

Dated: September 28, 2023      */s/ Andrew G. Schultz*

Andrew G. Schultz
**RODEY, DICKASON,**
**SLOAN, AKIN & ROBB, P.A.**
201 3rd Street NW, Suite 2200
Albuquerque, NM 87102
aschultz@rodey.com
505-768-7288